**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**

**TODD, C.J., DONOHUE, DOUGHERTY, WECHT, MUNDY, BROBSON, JJ.**

| | | |
|---|---|---|
| SOUTH BETHLEHEM ASSOCIATES, LP | : | No. 41 MAP 2022 |
| | : | |
| | : | Appeal from the Order of the |
| v. | : | Commonwealth Court dated January |
| | : | 29, 2021 at No. 321 CD 2020 |
| | : | Affirming the Order of the Court of |
| ZONING HEARING BOARD OF | : | Common Pleas of Northampton |
| BETHLEHEM TOWNSHIP, | : | County dated February 14, 2020 at |
| PENNSYLVANIA | : | No. C48-CV-2019-6785 |
| | : | |
| | : | ARGUED: November 30, 2022 |
| v. | : | |
| | : | |
| | : | |
| | : | |
| CENTRAL PA EQUITIES 30, LLC | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: SOUTH BETHLEHEM | : | |
| ASSOCIATES, LP | : | |

**OPINION**

**JUSTICE MUNDY**                                       **DECIDED:  May 16, 2023**

In this discretionary appeal, a local zoning board granted a request for variances needed by a property owner to build a hotel on the subject property. The owner of a competing hotel, who opposed the grant of such relief, was permitted to appear before the board, cross examine witnesses, and provide oral argument. The question presented is whether that party had standing to seek judicial review of the board's subsequent ruling.

Appellee Central PA Equities 30, LLC ("Central") owns the subject property, an approximately 3.5-acre parcel in Bethlehem Township, Northampton County, located in

a Light Industrial/Office Campus (Phased) Zoning District, which permits a hotel use as of right. Central wants to construct a four-story, 107-room hotel on the property. The hotel would be about two blocks away from an existing hotel owned by Appellant South Bethlehem Associates, LP.

The subject property is bordered on the north and east by public rights of way. It is bordered on the west by a residential neighborhood known as Madison Farms. Under the local zoning code, construction on the property is subject to certain constraints: there must be fifty-foot setbacks from the rights of way and a 150-foot setback from the lot lines of any dwelling. Also, earth berms are required on the Madison Farms side as a buffer between the hotel and the residences.

If Central were to comply fully with the setback requirements, the buildable portion of the property would be a small triangular area comprising eleven percent of the subject property, which would be too small to build a viable hotel. Also, constructing earth berms on the Madison Farms side would be impractical because a utility easement for power lines on that side precludes grading changes. In view of these limitations, Central applied to the Zoning Hearing Board of Bethlehem Township, requesting a dimensional variance which would allow it to utilize a 74-foot setback from the residences (thus, a 76-foot variance), as well as a waiver of the earth-berm mandate.

The Board held a hearing on these requests, at which Central presented the testimony of a professional engineer and a hotel manager. Central also submitted a number of exhibits in support of its application for relief. Appellant's counsel, Timothy Stevens, Esq., appeared at the hearing and signed in on the appropriate form as an objector. Central objected to his participation because Appellant's hotel was 1,000 feet away, and hence, it was not within a 400-foot radius of the subject property so as to have been entitled under the zoning code to notice of the hearing. Central posited, moreover,

that Appellant was only appearing as a business competitor to oppose the construction of a nearby hotel. Thus, Central argued Appellant lacked standing to oppose the requested variances. Attorney Stevens countered that Appellant had a "definite interest in the construction of a hotel that is just two blocks away" from its existing hotel. N.T., 5/29/19, at 14.

The Board overruled Central's objection. The Board's solicitor explained that, under the Municipalities Planning Code (MPC), when Attorney Stevens "entered his appearance on the objector sheet," he became "a party of record." *Id*. at 34-35. In this regard, the solicitor noted that per the MPC, even if the objector's property was "on the other side of the township," he could still be a party of record. *Id*. at 35. *See generally* 53 P.S. § 10908(3) (relating to party status at zoning board hearings). Attorney Stevens did not call any witnesses but he did cross-examine Central's witnesses and provide oral argument in opposition to the variances at the close of the hearing.

The Board ultimately issued a unanimous written decision granting the requested variances.[1]

Appellant appealed to the county court, and Central intervened, defending the Board's substantive decision and arguing Appellant lacked standing. The court ruled against Central on the question of standing, concluding that Appellant had standing to

---

[1] In its findings of fact, the Board stated, among other things, that: the proposed hotel would have less of an impact on the surrounding area than a warehouse and office building that had previously been approved for the property (but not built); the relief was necessary to enable the reasonable use of the property; due to the unique shape and topography of the parcel, Central demonstrated an unnecessary hardship that it did not create; an earth berm was unnecessary because the adjacent residential properties would be protected from traffic noise through the natural slope of the real estate, appropriate buffering vegetation including a hedge row, and the preservation of existing mature trees; the dimensional variance, if authorized, would be the minimum variance that could afford relief; and construction of the hotel would not substantially impair the appropriate use or development of adjacent property.

appeal as it had timely appeared before the Board as an objector and was presumed to be affected by the variance requests as it owned a nearby property.[2]  The court did, however, affirm the Board's decision on the merits.

Appellant appealed to the Commonwealth Court.  In an unpublished decision, the court affirmed the county court's order on the grounds Appellant lacked standing.[3]  It reasoned zoning appeals may not be utilized solely as a method to deter free competition, and it relied for this position on *In re Farmland Industries*, 531 A.2d 79 (Pa. Cmwlth. 1987), which in turn referenced a now-replaced provision of the MPC that allowed appeals to court by "aggrieved" persons.  *See* 53 P.S. § 11007 (repealed).  The court concluded that Appellant failed to show aggrievement at the hearing because the asserted impact upon its interest stemmed not from the variances themselves but from the competition that would arise from the proposed new hotel.  As such, the court did not reach Appellant's substantive arguments challenging the Board's decision to grant the variances.

We granted allocatur limited to whether the Commonwealth Court erred in holding that Appellant lacked standing to seek judicial review.  *See S. Bethlehem Assocs. v. ZHB of Bethlehem Twp.*, 275 A.3d 484 (Pa. 2022) (*per curiam*).

Ordinarily, standing to initiate judicial proceedings depends on the litigant being adversely affected in some way.  *See Wm. Penn Parking Garage v. City of Pittsburgh*, 346 A.2d 269, 280 (Pa. 1975).  To assess whether a litigant is affected in a manner the law recognizes, courts "consider whether the litigant has a substantial, direct, and

---

[2] *See S. Bethlehem Assocs. v. ZHB of Bethlehem Twp.*, No. C48-CV-2019-6785, *slip op*. at 7 (C.P. Northampton Feb. 14, 2020) (citing *Grant v. ZHB of Penn Twp.*, 776 A.2d 356, 358-59 (Pa. Cmwlth. 2001); *Johnson v. ZHB of Richland Twp.*, 503 A.2d 1117, 1119 n.1 (Pa. Cmwlth. 1986); *Baker v. ZHB of W. Goshen*, 367 A.2d 819, 822-23 (Pa. Cmwlth. 1986)).

[3] *See S. Bethlehem Assocs. v. ZHB of Bethlehem Twp.*, No. 321 C.D. 2020, 247 A.3d 1198, 2021 WL 303046 (Pa. Cmwlth. Jan. 29, 2021) (Table).

immediate interest in the matter." *Markham v. Wolf*, 136 A.3d 134, 140 (Pa. 2016). This occurs when "the party's interest surpasses that of the general public in procuring obedience to the law, the harm alleged was caused by the matter complained of, and the harm is not remote and speculative." *Trust Under Ashton's Will*, 260 A.2d 81, 88 (Pa. 2021).

The same is not necessarily true of local administrative proceedings. Section 908(3) of the MPC indicates standing to appear before a local zoning board considering an application for a variance, and to present evidence and cross-examine witnesses in relation to the application, is broader than aggrieved-person standing as outlined above. That provision states:

> The parties to the [zoning board] hearing shall be the municipality, any person affected by the application who has made timely appearance of record before the board, and any other person including civic or community organizations permitted to appear by the board. The board shall have power to require that all persons who wish to be considered parties enter appearances in writing on forms provided by the board for that purpose.

53 P.S. § 10908(3). By its terms the provision accords objector status to certain persons who have entered their appearances in writing on the appropriate form – which Appellant did in the present case. The "any other person" language is quite broad, and while we need not determine its limits (if any) at this juncture, the record reflects Appellant attained objecting-party status before the Board pursuant to this provision. *See* N.T., 5/29/19, at 34-35. It is a separate question whether such party status automatically transfers intact to the arena of judicial review.[4]

---

[4] The dissent references *In re Larsen*, 616 A.2d 529 (Pa. 1992), to support its assertion that this Court has previously indicated standing to seek judicial review follows automatically from a party's "unsuccessful participation" before a zoning board. Dissenting Op. at 17. In *Larsen*, this Court issued a *per curiam* order imposing a public reprimand upon former Justice Larsen, and accepting a report written by the Judicial Inquiry and Review Board. However, the portion of *Larsen* cited by the dissent does not
(continued…)

In terms of policy, it is possible that, in enacting Section 908(3), the General Assembly wanted to avoid the need for mini-hearings on aggrievement before local zoning boards. It is also possible the General Assembly wanted to allow for a broad range of views for and against the relief sought without regard to aggrievement, so as to fully inform the board on the merits of the proposed variance. *Cf.* 2 Pa.C.S. §554 (providing local agencies are not bound by technical rules of evidence at their hearings). But even if the Legislature's intent was to avoid such delays and limitations before local zoning boards, it does not follow that it sought to do away with the need for aggrievement as a predicate to an appeal to a court of law, whose jurisprudential interests and procedures are not identical to those of a local administrative body.

For its part, Appellant places heavy reliance on MPC Section 908(9), 53 P.S. § 10908(9). *See, e.g.*, Brief for Appellant at 11. That is a lengthy subsection dealing in part with land use applications deemed approved by operation of law due to the board's failure to take timely action. Its final sentence states: "Nothing in this subsection shall prejudice the right of any party opposing the application to appeal the decision to a court of competent jurisdiction." 53 P.S. § 10908(9). But this is not an affirmative grant of appellate rights. It indicates nothing in subsection 908(9) should be interpreted to negate such rights, but it does not purport to grant any such rights either.

Moreover, Section 908(9), as well as 908(3), appear in Article IX of the MPC, whereas judicial review of zoning board decisions is governed by Article X-A. *See* 53 P.S. §11001-A ("The procedures set forth in this article shall constitute the exclusive

---

contain analysis by this Court, but by the Judicial Inquiry and Review Board. This Court did not expressly adopt all of the report's legal analysis as our own. As such, its status as Pennsylvania Supreme Court precedent is not entirely clear. *Cf. Commonwealth v. Tilghman*, 673 A.2d 898, 904 (Pa. 1996) (observing a *per curiam* affirmance by this Court does not create Supreme Court precedent; this Court must expressly affirm on the basis of the lower court's opinion in order to do so).

mode for securing review of any decision rendered pursuant to Article IX . . ..").  Article X-A, however, is silent on the prerequisites for appealing to court.  It includes provisions specifying that such appeals are to be taken to the court of common pleas in the district where the land is located, *see* 53 P.S. § 11002-A(a); that such appeals must be filed within 30 days after the order is entered or the date upon which notice of a deemed decision is given, *see id*.; that appeals based on an alleged procedural defect may only be taken by a person who establishes that the zoning decision has resulted (or could result) in a property use that directly affects the person's substantive property rights, *see id*. § 11002.1-A(c); and many other provisions governing various aspects of appeals to court.  The General Assembly also knew how to define the class of parties permitted to appeal to court generally, but it chose not to do so.  The most probable reason, in our view, is that the Legislature intended for the courts of this Commonwealth to determine for themselves who would possess standing to initiate judicial proceedings to review a final decision rendered by a local zoning board.[5]

---

[5] The Local Agency Law, *see* Act of Apr. 28, 1978, P.L. 202, No. 53, § 5 (as amended 2 Pa.C.S. §§ 551-554, 751-754), applies "to all local agencies," 2 Pa.C.S. §551, which are defined as any government agency other than a Commonwealth agency, *see id*. §101. This description encompasses municipal zoning boards.  As such, it has previously been applied to appeals from zoning board rulings.  *See, e.g.*, *Money v. Bd. of Supervisors of Westtown Twp.*, 89 A.3d 308, 312 (Pa. Cmwlth. 2014); *Nernberg v. City of Pittsburgh*, 620 A.2d 692, 694 (Pa. Cmwlth. 1993); *see also Metal Green, Inc. v. City of Phila.*, 266 A.3d 495, 515 (Pa. 2021) (plurality) (indicating that the Local Agency Law "governs review of adjudications by zoning hearing boards").

We do not decide at present whether it controls as to the case *sub judice*, as neither Central nor the Board mention it as a basis to find a lack of standing.  We note in passing, however, that its appeal-to-court provision contains an aggrievement prerequisite, *see* 2 Pa.C.S. § 752 ("Any person aggrieved by an adjudication of a local agency who has a direct interest in such adjudication shall have the right to appeal therefrom to the court vested with jurisdiction of such appeals . . .."), which is similar to the traditional standing test that we ultimately conclude pertains here.  *See, e.g.*, *Scott v. City of Phila. ZBA*, 126 (continued…)

Standing exists as a jurisprudential doctrine to protect the courts and the public from improper plaintiffs. *See Firearm Owners Against Crime v. Papenfuse*, 261 A.3d 467, 481 (Pa. 2021). An improper plaintiff is one who has no legally enforceable interest affected by the matter complained of. *See Application of Beister*, 409 A.2d 848, 850 n.2 (Pa. 1979). The "legally enforceable" qualifier is important because an interest may be harmed, but it may not be the type of interest the law protects. *See generally Nernberg v. City of Pittsburgh*, 620 A.2d 692, 695 (Pa. Cmwlth. 1993) (explaining that, to establish standing to seek judicial review as an "aggrieved person" under the Local Agency Law, a litigant must demonstrate that the interest harmed "is one which the law is intended to protect") (citing *Wm. Penn*, 346 A.2d at 284).

Thus, in *In re Hickson*, 821 A.2d 1238 (Pa. 2003), the plaintiff filed a private criminal complaint in an effort to initiate a prosecution which he believed would have given him an advantage in an upcoming election and in a prospective civil suit. These interests of the litigant would have been advanced by a prosecutorial decision to proceed against the alleged offender based on the private complaint, and these interests were accordingly harmed by the district attorney's decision not to act. When the plaintiff sought judicial review of the district attorney's decision, we did not consider such harm sufficient to give him standing. *See id.* at 1245. Similarly, the federal courts have held that harm to ideological interests alone is insufficient to confer Article III standing. *See, e.g.*, *Competitive Enter. Inst. v. Nat'l Highway Traffic Safety Admin.*, 901 F.2d 107, 112 (D.C. Cir. 1990) (citing *Sierra Club v. Morton*, 405 U.S. 727, 739 (1972)); *accord* O'REILLY, ADMINISTRATIVE RULEMAKING § 15:50 (2022 ed.).

---

A.3d 938, 940 (Pa. 2015); *Pittsburgh Trust for Cultural Res. v. Pittsburgh ZBA*, 604 A.2d 298, 301-02 (Pa. Cmwlth. 1992).

Being free from market competition is similar: it is in the interest of the established hotel, Appellant herein, to maintain market share and pricing without a new hotel cropping up two blocks away, but that is not the type of interest the law recognizes as enforceable in court. The reason is based in public policy, which protects market competition but not market competitors – at least not from competition. Hence, such an interest cannot be the basis for a claim to aggrievement for purposes of standing to commence a lawsuit. Extending Section 908(3) of the MPC, which relates to standing to appear before a zoning board considering a land use application, to the arena of judicial review would be contrary to such policy. In this respect, the Commonwealth Court appropriately referred to a passage from its *Farmland Industries* decision which states:

> It is clear . . . that Farmland is using this process to impede the location of a competitor in its trading area. We cannot allow zoning appeals to be used as a method to deter free competition.

*Id*. at 84. Even though the statutory provision applicable in *Farmland Industries* has been repealed, it remains a valid policy objective to prevent the zoning appeals process from being misused for the sole purpose of hindering market competition, and that objective informs our interpretation of the MPC. *See* 1 Pa.C.S. § 1922(5) (providing the General Assembly favors the public interest over any private interest).[6]

Here, it is undisputed that Appellant's sole motive for opposing the variance is that its financial interests would be affected by having to compete for business with Appellee's

---

[6] We do not overlook Appellant's argument that Section 11007 was "replaced" by Section 10908, which in turn "broadened the standing of a party" to appeal to court. Brief at 11. We just disagree. As developed above, Section 10908 does not appear in Article X-A and it relates only to standing to appear before a local zoning board. And the General Assembly is presumed to have been aware of our longstanding test for standing to seek judicial review when it made that legislative change. Because the requirement of standing serves important policy objectives as summarized above, if the General Assembly intends to override that requirement it will have to say so more explicitly; Article X-A's silence on the issue is an insufficient basis to conclude that that was the Legislature's intent.

proposed hotel. Appellant was allowed to make its case to the zoning board consistent with the MPC's liberal allowance of party status before that administrative body. But it does not follow that the MPC or this Court's standing jurisprudence must recognize a right in favor of Appellant to continue its opposition through an appeal to court. Such would allow Pennsylvania's judicial machinery to be used in service of a business's effort to be free from competition to the detriment of the traveling public.

In sum, then, we hold that a party who appears before a zoning board may only appeal an adverse decision to court if that party has standing per this Court's traditional understanding of the concept. Such is consistent with our decision in *Hickson*, where Rule of Criminal Procedure 506 (then-Rule 106) was silent with regard to a citizen's standing to seek judicial review of prosecutorial inaction on a private criminal complaint. We held that such silence did not negate the ordinary requirement of standing to institute judicial proceedings. *See Hickson*, 821 A.2d at 1243. Further, we find in this matter that Appellant lacked standing to appeal, as its only interest affected by the zoning board's ruling was its desire to suppress competition in the open market.

The order of the Commonwealth Court is affirmed.

Chief Justice Todd and Justice Dougherty join the opinion.

Justice Donohue files a dissenting opinion in which Justice Wecht joins.

Justice Brobson did not participate in the consideration or decision of this matter.